UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JERMAINE A. BULLARD,
    Plaintiff,

vs.                              Case No.: 3:20cv5495/MCR/EMT

TRAVIS E. DYKES,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jermaine A. Bullard (Bullard), an inmate of the Florida Department of Corrections, is proceeding pro se and in forma pauperis in this civil rights case filed under 42 U.S.C. § 1983. Presently before the court is Bullard's Second Amended Complaint (ECF No. 21).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by Bullard, it is the opinion of the undersigned that his claims should be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

I.    BACKGROUND

Bullard names Lieutenant Travis Dykes as the sole Defendant in his Second Amended Complaint (ECF No. 21 at 1, 2). Bullard claims that Lieutenant Dykes used excessive force against him on April 3, 2020, and then denied him medical attention, in violation of the Eighth and Fourteenth Amendments (*id.* at 5–9).[1] Bullard seeks declaratory relief and compensatory and punitive damages (*id.* at 7).

II.   STATUTORY SCREENING STANDARD

Because Bullard is a prisoner proceeding in forma pauperis, federal statutes require the court to dismiss this case if the court determines that his allegations fail to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). The court may consider documents attached to a complaint or incorporated into the complaint by reference,

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system.

Case No.:  3:20cv5495/MCR/EMT

as well as matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are

conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

III. BULLARD'S FACTUAL ALLEGATIONS

The court includes factual allegations from Bullard's Second Amended Complaint (ECF No. 21) and any clarifying facts included in his previously filed complaints (ECF Nos. 1, 12). Bullard alleges that on April 3, 2020, he was handcuffed from behind and escorted to a room for a classification review (ECF No. 21 at 5). Bullard alleges as he exited the room, he nearly collided with Officer Perkins (*id.*). Bullard alleges Officer Perkins told him to watch where he was going; and Bullard responded, "You are in the doorway" (in Bullard's initial Complaint, he admitted he responded with a more sanctimonious statement, "I walk where I want to walk" (*see* ECF No. 1 at 7)). Bullard alleges several officers, including Defendant Lieutenant Dykes, "rushed" him and told him to shut up (ECF No. 21 at 5–6). Bullard alleges he responded, "She [Officer Perkins] was standing in the doorway. I don't have to shut up." (*id.*). Bullard states one of the officers, Officer Manners,

then grabbed his right arm and said, "You don't want no problems with us" (*id.* at 6). Bullard alleges he shrugged his shoulders in response to Officer Manners' comment (*id.*). Bullard alleges Defendant Lieutenant Dykes then came behind him and forcefully lifted his (Bullard's) arms in the air, causing him to tilt forward and "walk downwardly in a painful manner" (*id.*). Bullard alleges when he and the escorting officers reached his cell, Defendant Dykes and another officer "applied more force . . . to his maneuver" causing Bullard to tilt forward even more and fall to the floor (*id.*). Bullard alleges while he was on the floor, Defendant Dykes "snapped and fracture[d]" his right wrist (*id.*). Bullard alleges he screamed in pain, and then Dykes grabbed the middle finger of his right hand and "snapped it, all so [sic] breaking it" (*id.*). Bullard alleges he was picked up off the floor "in pain and agony" and placed in his cell (*id.*).

Bullard alleges his right hand was "severely swollen" and his wrist was bleeding where the handcuff cut his skin (ECF No. 21 at 6, 8; *see also* ECF No. 1 at 9). Bullard alleges he told another officer, Captain Schrock, that he was in pain, and Schrock saw his injuries, but Bullard did not receive medical attention until days later, after his mother called the institution (ECF No. 21 at 8). Bullard alleges he was then seen by medical staff on April 13, 2020 (ten days after the incident) and received an x-ray on April 15, 2020 (*id.*).

Ballard attached a copy of the x-ray report to his initial Complaint (*see* ECF No. 1 at 47, Radiology Report). According to the report, Bullard received an x-ray of his right hand and middle (third) finger on April 15, 2020 (*see id.*). The x-ray revealed no acute fracture, dislocation, or destructive bony process of the right hand (i.e., no evidence of a fractured wrist) (*id.*). The x-ray also showed no acute fracture, dislocation, or destructive bony process of the third (middle) finger, but noted soft-tissue swelling along one of the joints (*id.*). The report noted two *old healed* fractures, one of the fifth finger and the other at the base of the third (middle) finger (*see id.*) (emphasis added).

As previously noted, Bullard claims that Defendant Lieutenant Dykes' conduct constituted excessive force and deliberate indifferent to his medical needs, in violation of the Eighth and Fourteenth Amendments (ECF No. 21 at 7, 9).

IV.  DISCUSSION

    A.  **Bullard's Excessive Force Claim**

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (quotation marks omitted). In the prison context, an excessive force claim requires a plaintiff to show an objective injury "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had

a sufficiently culpable state of mind." *Id.* at 1304 (quotation marks omitted). Both inquiries are contextual, and the objective harm inquiry is responsive to contemporary standards of decency. *Id.* While not every "malevolent touch" by a prison guard amounts to excessive force, a *de minimis* use of force is cognizable under the Eighth Amendment if it is "repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (quotation marks omitted). While a plaintiff complaining about a given push or shove almost certainly fails to state a valid excessive force claim where no discernible injury occurs, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

For the subjective intent prong for excessive force claims, a plaintiff must show that the defendant applied force maliciously and sadistically for the purpose of causing harm. *Wilkins*, 559 U.S. at 38. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quotation marks and brackets omitted). In determining whether force was applied maliciously or sadistically, the court consider several factors, including (1) the need to apply force,

(2) the relationship between that need and the amount of force applied, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of the forceful response. *Id.* Where prison officials maliciously and sadistically apply force to cause harm, contemporary standards of decency are always violated, even in the absence of significant injury. *Wilkins*, 559 U.S. at 37. Once the need for force ceases, any continued application of harmful force may constitute an Eighth Amendment violation. *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991).

Here, Bullard admits that Defendant Lieutenant Dykes was one of the officials present when Bullard told Officer Perkins, "I walk where I want to walk"; when Bullard told the officers, "I don't have to shut up"; and when Bullard gave a dismissive shrug to Officer Manners. An inmate's disrespect of an officer is an offense punishable under the FDOC's Rules of Prohibited Conduct. *See* Fla. Admin. Code r. 33-601.314, Section 1—Assault, Battery, Threats, and Disrespect, 1-4 (disrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like is punishable by up to 30 days in disciplinary confinement and forfeiture of up to 60 days of gain time). Lieutenant Dykes' lifting Bullard's arms from behind was a *de minimis* use of force, and a reasonable response to Bullard's disrespect. When Bullard fell to the floor,

Lieutenant Dykes' twisting his wrist and finger was a reasonable method of returning Bullard to the officers' custodial control—again, it was no more than a *de minimis* use of physical force, and it certainly was not "repugnant to the conscience of mankind." Indeed, the x-ray report refutes Ballard's allegation that he suffered a broken wrist and broken finger, and demonstrates that Bullard suffered *de minimis* injury form the use of force.

Further, even if the force was not *de minimis*, Bullard's factual allegations do not plausibly suggest that Lieutenant Dykes' conduct was malicious and sadistic; rather, his allegations suggest it was a good faith effort to restore discipline to a disrespectful inmate and maintain discipline and control. *See, e.g., Burke v. Bowns*, 653 F. App'x 683, 697–98 (11th Cir. 2016) (alleged actions of corrections officer in "slamming" federal inmate, who purportedly spit on officer while being escorted from recreation yard, face-first to ground while inmate was fully restrained, pinning inmate to ground using arm bar hold, and chastising inmate for having filed administrative complaint, did not amount to use of excessive force, in violation of inmate's Eighth Amendment rights; attack was no more than *de minimis* use of physical force, and even if force used was not *de minimis*, it was not malicious and sadistic, but to the contrary, it was good faith effort to restore discipline) (unpublished but cited as persuasive authority); *Smith v. Sec'y, Dep't. of Corr.*, 524

F. App'x 511, 513–14 (11th Cir. 2013) (prison official's use of force by pressing prisoner against wall and twisting his arm was *de minimis*, rather than excessive, force in violation of Eighth Amendment, where prisoner suffered only minor injury of facial swelling, and type of force used by official was not repugnant to conscience of mankind).

Bullard's factual allegations do not state a plausible excessive force claim against Defendant Lieutenant Dykes. Therefore, his claim should be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

**B.     Bullard's Claim of Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (quotation omitted). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

To meet the objective prong, the plaintiff must demonstrate an objectively serious medical need. *Farrow*, 320 F.3d at 1243. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal

quotation marks and citation omitted).  A medical need may also be considered serious if a delay in treatment worsens the patient's condition. *Id.* "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted).  To show "deliberate indifference," a prisoner must show that the defendant actually knew that the inmate was at risk of serious harm if he did not receive medical treatment, but unreasonably—and at least recklessly—delayed, failed to provide, or refused to provide medical treatment. *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  "[T]he deliberate-indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence."  *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013).  It is in fact akin to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official

knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted).  But "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Here, Bullard alleges he informed *Captain Schrock* that was he was in pain, and he alleges *Schrock* saw that he needed medical attention, but Bullard does not allege he made his medical needs known to *Defendant Lieutenant Dykes*.[2]  And although Bullard alleges his wrist was bleeding from the handcuff and his hand was "severely" swollen, these allegations do not plausibly suggest that Lieutenant Dykes actually knew that Bullard's injuries were such that he was at a *substantial risk* of *serious harm* if he did not receive medical treatment.  *See, e.g., Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 918–19 (11th Cir. 2019) ("[A]ssuming that Sears was denied medical care by prison officials, there is no evidence that [the named Defendants] were the officials who deliberately denied him treatment.  Thus,

---

[2] Bullard named Captain Schrock as a defendant and asserted a deliberate indifference claim against Schrock in both his initial Complaint and Amended Complaint (*see* ECF Nos. 1, 12), but Bullard names Lieutenant Dykes as the sole Defendant in his Second Amended Complaint, and asserts Eighth Amendment claims against only Defendant Dykes (*see* ECF No. 21 at 1–2, 7, 9). Bullard thus abandoned his deliberate indifference claim against Captain Schrock.  *See* N.D. Fla. Loc. R. 15.1(A) ("Allegations in a prior pleading that are not set out in the amended pleading are deemed abandoned . . . .").

Case No.:  3:20cv5495/MCR/EMT

a reasonable fact-finder could not find that [the named Defendants] *deliberately* delayed or denied him access to medical care for reasons that amounted to more than negligence, as he admits that he never made his medical needs known to them.") (emphasis in original).

Moreover, as discussed *supra*, the x-ray report attached to Bullard's initial Complaint belies his allegations regarding the severity of his injuries. Bullard alleges Lieutenant Dykes *actually fractured* the middle finger of his right hand and his right wrist, but the x-ray report from less than two weeks after the use of force demonstrates *no fracture* or acute abnormality of his wrist, and an *old healed* fracture of the right middle finger with soft-tissue swelling along one of the joints.

Bullard's allegations do not plausibly suggest that Lieutenant Dykes was deliberately indifferent to a serious medical need. Therefore, Bullard's Eighth Amendment claim of deliberate indifference should be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

V.   CONCLUSION

Bullard's factual allegations fail to state a plausible constitutional claim against Defendant Lieutenant Dykes, and there is no indication that providing Bullard another opportunity to amend his complaint would produce a pleading which states a plausible constitutional claim. Therefore, the undersigned recommends that

Bullard's claims be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1);

2. That all pending motions be **DENIED** as moot; and

3. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 11th day of March 2021.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.